# IN THE COURT OF APPEALS OF IOWA

No. 21-0865
Filed December 7, 2022

IN RE THE MARRIAGE OF KIMBERLY KAY BJUGAN-ALLEN
AND ROBERT CHARLES ALLEN

Upon the Petition of
KIMBERLY KAY BJUGAN-ALLEN,
     Petitioner-Appellant/Cross-Appellee,

And Concerning
ROBERT CHARLES ALLEN,
     Respondent-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

Ex-spouses both challenge the division of marital property. **AFFIRMED ON BOTH APPEALS.**

Shanon M. Hounshell of SMH Law, PLLC, Ankeny, for appellant.

Anjela Shutts and Anna E. Mallen of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**Tabor, Presiding Judge.**

Robert Allen (Rob) and Kimberly Bjugan-Allen[1] (Kimber) married in 2014. When they divorced six years later, the district court awarded each of them the property that they brought into the marriage. The court also ordered Rob to make an equalization payment of $3530.[2] Kimber appeals and Rob cross-appeals, challenging the amount of that payment. Finding the court achieved equity between the parties, we affirm on both appeals.

## I. Facts and Prior Proceedings

Both Rob and Kimber accumulated valuable assets while they were single. Kimber had long-time employment as a customer service representative for a major financial company. She earned about $53,000 annually. Rob mostly worked as a tree trimmer for a large firm.[3] His pay reached nearly $87,000 per year. Coming into their marriage, both Rob and Kimber had retirement accounts and owned homes in Des Moines. The couple chose to live at Rob's residence and rented out Kimber's house. They had no children together. So the only fighting issue on appeal is the division of their property.

---

[1] By a provision of the decree, Kimber's last name is now Bjugan.

[2] The court originally ordered an equalization payment of about $19,000, but reduced the amount after Rob filed a motion to reconsider under Iowa Rule of Civil Procedure 1.904(2).

[3] For two years during the marriage, Rob pursued a venture as an independent distributor, operating a route to sell bread at various stores. But the pay did not pan out, and he returned to his more lucrative job as a tree trimmer.

The district court awarded both parties the property that they brought into the marriage, offering this valuation of their assets and liabilities:[4]

| Description | Kimber | Rob |
|---|---|---|
| Kimber's home | $128,000 | |
| Mortgage | ($938) | |
| Rob's home | | $160,000 |
| Mortgage | | ($88,423) |
| 2020 Hyundai | $28,785 | |
| Auto loan | ($31,476) | |
| 2019 Chevy | | $36,000 |
| 1996 Mercury | | $500 |
| 1994 trailer | | $500 |
| Kimber's bank account | $2315 | |
| Rob's bank account | | $5611 |
| Kimber's 401k | $90,760 | |
| Loan against 401k | ($20,540) | |
| Kimber's retirement annuity | $48,445 | |
| Rob's IRA | | $44,503 |
| Rob's pension | | $78,239 |
| Rob's retirement annuity | | $127,124 |
| Kimber's personal property | $3078 | |
| Rob's personal property | | $1800 |
| Rob's LLC | | $1300 |
| Kimber's other debts | ($12,984) | |
| Rob's other debts | | ($0) |
| Total | $235,447 | $367,153 |

The court also ordered Rob to make an equalization payment to Kimber based on half the amount the parties paid down on Rob's home mortgage during marriage and half the amount Kimber paid for repairs, remodeling, and appliances in Rob's home. After hearing Rob's post-trial motion, the court reduced the equalization payment by half the amount the parties paid down on Kimber's home mortgage during marriage, ultimately ordering Rob to pay $3530 to Kimber.

---

[4] We've rounded the amounts to the nearest dollar.

Kimber appeals and Rob cross-appeals the equalization payment. Kimber also requests appellate attorney fees.

## II.      Scope and Standard of Review

We review dissolution proceedings de novo. *In re Marriage of Hansen*, 886 N.W.2d 868, 871 (Iowa 2016). We give weight to the district court's factual findings, but they do not bind us. *Id.* We will modify a decree only when its provisions fail to do equity. *Id.*

## III.     Analysis

## A.      Equalization Payment

Before issuing a decree, the district court must equitably divide all property owned by the parties at the time of divorce (except property that one spouse inherited or received as a gift). *Id.* But, as we often say, equity is not always synonymous with an equal division or a precise percentage distribution. *Id*. Rather, the court must decide what is fair and equitable in each circumstance. *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009).

When equitably dividing the marital property, we mull the factors in Iowa Code section 598.21(5) (2020). *See Hansen*, 886 N.W.2d at 872. For this appeal, key among those factors is "[t]he property brought to the marriage by each party." Iowa Code § 598.21(5)(b). True, premarital ownership is just one factor among many to be considered in a fair distribution. But in a short-term marriage, like this one, a party's claim to the premarital property owned by the other spouse is minimal. *Hansen*, 886 N.W.2d at 872–73.

Rob and Kimber entered a pretrial stipulation, agreeing who would receive what marital property. Thus, their arguments on appeal focus on the equalization

payment designed to do equity after that property division. "An equalization payment suggests each party should be awarded an equal amount of assets and liabilities." *Id.* at 873. "But to achieve equity, the division need not be equal in most short-term marriages. Rather, it is often equitable to simply award the property to the party that brought it into the marriage." *Id.*

### 1. Kimber's appeal

Kimber argues the equalization payment is too low considering her greater contributions to the marriage and the disparate value of marital assets awarded to each party. As shown in the chart above, the district court awarded Rob $367,153 in marital property compared to $235,447 for Kimber, a difference of $131,706.[5] But a division of marital assets may be equitable even if it is not a fifty-fifty split, especially for a short-term marriage involving significant premarital property. *See id.* Here, the difference between the awards reflects the character and value of the assets each party brought into the marriage.

The equalization payment reimbursed Kimber for the use of her funds to maintain and upgrade Rob's home. Beyond these expenditures, she did not make an "overriding contribution or sacrifice" for the marriage. *See id.* Both parties worked full time through most of the marriage. And despite Kimber's criticism, we do not discount Rob's efforts to build a business that did not yield the profit he'd hoped for. Kimber's actions of handling finances and paying bills are the type of contributions expected in a marriage. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007) ("Suffice it to say, neither party shirked his or her duties so as

---

[5] While Rob challenges the court's valuations of the marital property in his cross-appeal, we accept the court's valuations for purposes of Kimber's argument.

to justify disparate treatment."). Therefore, we decline to increase the equalization payment even considering the disparity in the property awards and the parties' relative contributions to the marriage.

### 2. Rob's appeal

Rob argues the district court committed five errors in its treatment of the marital property. He asserts the court should have: (1) considered the liability on his 2019 Chevy; (2) assigned a lesser value to his home; (3) set aside the premarital value of his retirement accounts; (4) assigned a lesser value to his pension; and (5) set aside the loan on Kimber's 401K.

As to the liability on Rob's vehicle, that debt should be considered when dividing the marital estate. But that consideration does not change the bottom line. The court determined Rob's vehicle is worth $36,000, and Rob asserts he has a $35,632 liability on it. Similarly, the court determined Kimber's vehicle is worth $28,785 with a liability of $31,476. Thus, the dissolution decree equitably awarded each party the vehicle he or she acquired during marriage; these vehicles have little net value after considering their respective liabilities.

As to Rob's other points, in essence he requests an alignment of "each party's assets and debts in a balance sheet to determine an equalization payment." *Hansen*, 886 N.W.2d at 873. Such accounting is unnecessary when the marriage was short-term with significant premarital assets and the property acquired during the marriage has minimal net value. *Id.* Instead, it is equitable to award the property to the party who brought it into the marriage. *Id.*

The biggest ticket items here are the two homes and the parties' retirement accounts. The parties held these assets before their marriage, and each party's

assets appreciated without significant contributions from the other party. (The exception is Kimber's contribution to the marital home recognized in the equalization payment.) Even if we accept Rob's claims concerning the net value of the property awarded each party, any adjustments would not fundamentally change our analysis. It was fair for the court to restore the assets to the party who brought them into their six-year marriage. We decline to reduce Rob's equalization payment despite his contentions about the value of their property awards.

### B. Appellate Attorney Fees.

Kimber requests appellate attorney fees. We award such fees as a matter of discretion. *In re Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021). We consider three factors: first the needs of the party seeking the award, then the ability of the other party to pay, and finally the relative merits of their appeals. *Id.* Looking to the first factor, Kimber works full time and received a fair share of the marital property. She has means to pay for her own representation. On the second factor, Rob earns a somewhat higher income and received a greater share of the marital property. And last, neither party was successful in attacking the decree. Considering all three factors, we decline to award appellate attorney fees. Costs are divided equally between the parties.

**AFFIRMED ON BOTH APPEALS.**